# McCarthy's Appeal.

68   217<br>181   529

1. During the temporary absence of a debtor, his wife or other person left in charge is authorized to claim the benefit of the exemption laws for him.

2. If a debtor has fraudulently concealed or removed any of his other property, it will bar his claim to the exemption.

3. The Exemption Law does not extend to cases of persons the subject of foreign attachment, nor, *it seems*, of those subject to domestic attachment.

March 20th 1871.    Before Thompson, C. J., Read, Agnew and Sharswood, JJ.    Williams, J., at Nisi Prius.

Appeal from the decree of the Court of Common Pleas of *Lehigh county:* No. 30, to July Term 1870.

The appeal in this case was from the decree of the court below, distributing the proceeds of the sale of the real estate of Charles B. McCarthy in Allentown, under an execution at the suit of Miller, Fetherwolf & Co. The contention was between the defendant under the Exemption Law and S: A. Bridges, Esq., a judgment-creditor.

The appraisers " summoned by the sheriff to appraise the property retained by the defendant," under the exemption laws, certified that it could not be divided, and valued it at $600. After deducting mechanics' lien, costs, &c., the balance for distribution was $127.79. Mr. Bridges' judgment amounted to $382.11.

The auditor, J. W. Wood, Esq., reported that amongst the claimants who appeared at the hearing was " Mrs. McCarthy by her counsel, H. C. Hunsberger, Esq."

There was evidence that the defendant, who was a carpenter, had been living in Allentown, and before the 15th of May had been working for a Mr. Breen; on that day he left the place and took with him only his tool-chest; said he was going to Jersey to build two new houses; his wife remained; he left some furniture. A few

[McCarthy's Appeal.]

days afterwards, persons to whom he was indebted took some of the furniture; his wife was there and did not object to the removal. Breen, who was a creditor, remonstrated against its removal, but the wife still allowed it.

The auditor reported that the claim for exemption "was resisted by Mr. Bridges, on the ground, first, that McCarthy was an absconding debtor, and second, that he was a non-resident, and therefore liable to foreign attachment." After the discussing the case the auditor allowed " Mrs. McCarthy to have the exemption," and in his schedule, after enumerating prior claims, he stated this claim thus: "Balance allowed defendant under Exemption Law, $127.79."

Mr. Bridges excepted to the report of the auditor.

The court (Longaker, P. J., saying that the only question was whether the wife could claim the exemption for her husband) decided that she could not claim the exemption unless by the authority of her husband, and that such authority could not be presumed from the relation of husband and wife.

He further said : * * * "We are therefore of the opinion that the auditor erred in distributing the balance of the proceeds to the defendant. He has taken no part in these proceedings, and having departed from the state as an insolvent debtor, leaving his personal property and real estate at the disposal of his creditors, we are warranted in finding the fact that he never intended to claim the exemption. The defendant therefore having waived his privilege, his wife neither for him nor for herself, without his authority or subsequent ratification, can set it up for him. * * * The distribution must therefore be reformed so far as regards the $127.79 awarded to the defendant in the execution, and the same is hereby awarded to S. A. Bridges, Esq., on account of his judgment."

McCarthy appealed, and assigned this decree for error.

*H. C. Hunsberger* and *E. J. Moore*, for appellant, cited Yelverton *v.* Burton, 2 Casey 351; Huey's Appeal, 5 Id. 219; Strouse *v.* Becker, 2 Wright 190; Waugh *v.* Burkett, 3 Grant 319; Kenyon *v.* Gould, 11 P. F. Smith 292; Chew's Appeal, 9 Wright 228; Stewart *v.* Bowen, 13 Id. 245; Shaw's Appeal, Id. 180; Wilson *v.* McElroy, 8 Casey 82.

*C. M. Runk* (with whom was *F. A. R. Baldwin*), for appellee, cited Yelverton *v.* Burton, *supra*.

The opinion of the court was delivered, May 8th 1871, by

SHARSWOOD, J.—The real estate of the defendant was sold by the sheriff and the proceeds paid into court. An auditor was appointed to make distribution, upon whose report, awarding a

[McCarthy's Appeal.]

balance of $127.79 to be paid to the defendant under the Act of April 9th 1849, Pamph. L. 533, commonly called the Exemption Law, exceptions were filed by a judgment-creditor, which were sustained by the court and the money awarded to him.

The ground upon which the decree below is based is, that the claim before the auditor was made by the defendant's wife or an attorney who appeared for her. The defendant was absent from the county, under what circumstances will be presently noticed. The learned judge below thought that the wife of the defendant was not entitled to the exemption in her own right, in which he was clearly right, and also that she could not make the claim for her husband without showing her husband's assent thereto, in which we think that he was just as clearly wrong. The balance in court should be awarded not to the wife or her attorney, but to the husband. No one can receive it and give a valid discharge to the prothonotary but the husband or an attorney duly authorized by him. It was held by this court, in Wilson v. McElroy, 8 Casey 82, that during the temporary absence of the owner any person left in charge of the premises, and especially a child of proper age, is authorized to claim the benefit of the Exemption Law in case of a levy under an execution. "The undoubted object of the legislature in enlarging the exemption," said Mr. Justice Church, "was the protection somewhat of the debtor's family when there is any; and hence the members of it, so far as relates to notice that it is claimed in the temporary absence of the debtor, might almost be considered in the light of cestuis que trust." The principle applies with equal if not greater force to the wife of the debtor, and it has been expressly held accordingly that she is competent to make the claim: Waugh v. Burkett, 3 Grant 319.

Undoubtedly if the debtor has fraudulently concealed or removed any of his other property it would bar him of all claim to exemption: Emerson v. Smith, 1 P. F. Smith 90. If a man absconds, having turned his property into cash, or taken with him in specie any part of it, so as to show clearly a design to defraud his creditors, the case would be very plain. "If," said Mr. Justice Agnew, "a debtor can hide his property or keep it under cover so as to conceal its knowledge from the officer, and thereby assist himself to retain that which he finds it convenient or necessary to keep openly, his fraud bears directly upon the latter, for it is because the former is unknown or out of the way, the latter is suffered to remain with him." Mr. Justice Woodward was warranted in the remark made by him in Yelverton v. Burton, 2 Casey 354: "We do not legislate for men beyond our jurisdiction, and certainly not for absconding debtors; but the Act of 1849 was designed for our own citizens—for the families of the poor who are with us—that the rapacity of creditors might

not strip them of every comfort and convenience." This is said of persons non-residents, subject to the process of foreign attachment, but it is applicable as well to those who are the subjects of a domestic attachment. It is true, that by the 20th section of the Act of June 13th 1836, entitled "An Act relating to Domestic Attachments," Pamph. L. 611, it is provided, "that the wife and family, if any, of such debtor shall be entitled to retain for their own use, such articles as may be exempted from levy and sale upon execution." This provision is unaffected by the Act of 1849, which gives the $300 "in lieu of the property now exempt by law from levy and sale on execution, issued upon any judgment obtained upon contract and distress for rent." I am not aware of any act extending the $300 exemption to the case of a domestic attachment.

The auditor reported that the defendant below was not an absconding debtor, and we cannot say, upon an examination of the evidence, that he therein committed a plain mistake. McCarthy was a house carpenter. He evidently became embarrassed with debts. He had some furniture; perhaps more than was necessary and of better quality. According to the testimony of Thomas Breen, "Michael Corbett and Mrs. Gallagher took furniture away; the parties taking it claimed it as payment for their debts; he knew that they had a claim." They were not produced, nor was any evidence given to show that this was not bonâ fide on the part of the wife in permitting these persons to have the furniture. When McCarthy left he said he had a job in New Jersey, a contract to put up two houses there. All that he took with him was his chest of tools. There was no evidence that he had sold and converted anything into money. It would be a very harsh application of the rule, even if it exists in regard to all absconding debtors, to apply it in a case of this character—that of a debtor thus struggling with debt, and striving with his tools still to make a living for his family. No evidence was given as to the value of the tool chest and its contents. The great probability is, that it would not, with the balance of $127.79, make up the full $300 to which the law entitled the defendant in the execution.

> Decree reversed, and now it is ordered and decreed that the distribution as reported by the auditor be confirmed, and record remitted that this decree may be carried into execution.