## JOHN B. BALL v. J. C. CAMPBELL ET AL.

### APPEAL BY PLAINTIFF FROM THE COURT OF COMMON PLEAS OF BRADFORD COUNTY.

Argued March 13, 1890—Decided May 12, 1890.

1. A defendant in ejectment, claiming as a bona fide purchaser for value, against an asserted trust or fraud, must prove affirmatively the payment of the consideration for the deed relied upon, the mere receipt of the grantor, though in the deed, being insufficient for that purpose as against strangers to the deed.

2. But the burden of proving such payment affirmatively is not thrown upon the defendant until there is evidence adduced by the plaintiff, and more than a scintilla, which upon its submission to the jury would justify them in finding the trust or fraud alleged.

3. Where a conveyance is attacked as a fraud upon creditors, and the plaintiff's testimony does not supply proof that there was an intent to defraud creditors, or knowledge on the part of the grantee that there were creditors to be defrauded, it is not error to instruct the jury to find for the defendant.

Before PAXSON, C. J., STERRETT, WILLIAMS, McCOLLUM and MITCHELL, JJ.

No. 96 January Term 1890, Sup. Ct.; court below, No. 628 December Term 1887, C. P.

On December 3, 1887, John Ball brought ejectment against John C. Campbell and Alice, his wife, J. L. Ball and Cornelia, his wife, Harris Rogers and Margaret, his wife, Joshua Turk, Allen Rogers, John Teed, Wm. Campbell, Henry Smith and

## Statement of Facts.

Abram Brown, for five lots of land in Litchfield township, containing 621 acres more or less.   Issue.

At the trial on September 19, 1888, the plaintiff put in evidence a judgment in favor of himself against Benjamin Ball entered on September 16, 1884, for $5,957.02, on a note dated April 17, 1877, payable three years after date, for $4,123.13; and followed with the record of a sheriff's sale thereon, of the lands in dispute, to himself on September 1, 1887, the sheriff's deed being delivered to the plaintiff on September 8, 1887.   It was admitted that both parties to the action held under Benjamin Ball.   The plaintiff then rested.

The defendants put in evidence a judgment against Benjamin Ball in favor of M. W. Wheelock, entered May 15, 1875, for $10,401.54, and followed with the record of a sheriff's sale thereon, of the lands in dispute, to M. W. Wheelock on September 7, 1877, the sheriff's deed being delivered on September 12, 1877.   Deeds were then put in evidence for a part of the land in dispute from M. W. Wheelock to N. C. Harris, dated July 1, 1884, and recorded; for another part to N. C. Harris, dated June 5, 1884, and recorded; for another part to John Teed, dated June 13, 1881, and recorded, when the defendants rested their titles, for the present, on the title of M. W. Wheelock under the sheriff's deed, with the understanding that if it became necessary the different deeds of the defendants might be offered in evidence at a later stage of the case.

In rebuttal, the plaintiff put in evidence, under objection and exception to the defendants, a deposition of Benjamin Ball, and notes of the testimony of King Hulett, as a witness on the trial of a former ejectment, to the effect that before the sheriff's sale of the land in dispute to M. W. Wheelock, the latter arranged with Benjamin Ball, the judgment defendant, that the property should be sold at sheriff's sale and Wheelock would notify bidders not to bid, and would buy in the property for Mr. Ball; that at the sale, under this arrangement, there were several lots sold and only one bid on each lot; that there were about 200 acres of timber on the tract, and it was superior land, some of it worth $40 per acre; that Mr. Ball staid on the land two or three years afterwards, until dispossessed by the former ejectment; and that some time after the sale Mr. Wheelock declared to a witness desiring to purchase the land that he did not know

Charge of Court below.

but that Mr. Ball would redeem the property; he wanted him to redeem it. Other testimony to the same effect was introduced, when the plaintiff rested.

The defendants then put in evidence the deeds for the land to the several defendants tracing the title from M. W. Wheelock, but did not prove payment of the sum stated in the deeds as the consideration therefor. John B. Ball, the plaintiff, a son of Benjamin Ball, was called as if on cross-examination, and testified that he held the note upon which his judgment against his father was entered, prior to the sheriff's sale of the land to Wheelock, but he did not know the reason why he did not enter it before that sale; he saw no chance to secure the claim.

In sur-rebuttal, John Teed, a defendant, was called as if on cross-examination, and asked by the plaintiff:

Q. Prior to your purchase, did you not hear from Benjamin Ball or Moses Wheelock that there was an arrangement between Ball and Wheelock by which Wheelock bid off the property at very much less than it was worth, with the understanding that Ball was to have the property back?

Objected to, as irrelevant and immaterial.

By the court: Objection sustained, exception.[3]

Q. Did you not know prior to the purchase of this land that there was an agreement between Benjamin Ball and Moses Wheelock by which Wheelock agreed that he would discourage or prevent other persons from bidding, and that he would bid it in, and would give Benjamin Ball an opportunity to buy it back, to pay back the money and redeem the title?

Objected to as irrelevant and immaterial.

By the court: Objection overruled.

Q. Answer the question. A. You mean previous to my purchase? Q. Yes. A. I did not.

The testimony being closed, the court, ARCHBALD, P. J., charged the jury:

In this case your verdict will have to be for the defendants,[1] and the responsibility for it I take upon myself. While I might content myself with simply directing a verdict of that kind, I will put upon record my reasons for so doing.

The plaintiff claims title by virtue of a sheriff's sale upon a

judgment which he entered in 1884 against his father, Benjamin Ball. This judgment is founded upon a note which is dated April 17, 1877, and apparently he was thereby a creditor of his father to the extent of several thousand dollars at that time. The defendants claim title under M. W. Wheelock, who entered judgment against Benjamin Ball in 1875 for some $10,000, and had a sheriff's sale upon that judgment, and purchased the property September 7, 1877. The claim here on the part of the plaintiff has been that this sheriff's sale was fraudulent and void as to him, he at that time, in September, 1877, being a creditor of his father to the amount of some $3,000.

If he could establish that fact, and the controversy were between him and Mr. Wheelock, then Mr. Wheelock would acquire no title, because fraud voids anything which is tainted by it. There is an old statute passed in the time of Queen Elizabeth in England, that provides for avoiding any fraudulent conveyances. And if any fraudulent arrangement was entered into, to divest the title to one's property in fraud of creditors, that arrangement would be void at common law. The plaintiff had the burden upon himself to establish that fact, and if Mr. Wheelock was the defendant here, under the view that I have taken so far in the case, and under which I admitted Benjamin Ball's deposition, I might have to submit to you the question of whether there was a fraudulent arrangement between Benjamin Ball and Mr. Wheelock, under which this sheriff's sale took place, whereby Mr. Wheelock dissuaded creditors from coming in and buying, in order that he might take the title to the property for the benefit of Benjamin Ball.

But the controversy here has gone beyond that. We have in evidence conveyances of this same property from Mr. Wheelock to N. C. Harris, and one to Mr. Teed, the last witness on the stand, and from these parties we have other deeds carrying the property still further. [These are all upon an apparently good and valuable consideration; and, inasmuch as the property had passed from Mr. Wheelock before any steps were taken on the part of John B. Ball to call in question the validity of that sheriff's sale, he must, in order to recover now, affect these parties with notice of this fraudulent arrangement, otherwise his efforts must fail. Therefore, in that view of the case, I direct you to render a verdict in favor of the defendants.] [2]

Opinion of the Court. ·

The jury having returned a verdict for the defendants, as directed, judgment was entered thereon, when the plaintiff took this appeal assigning for error:

1. The direction to find for the defendants.[1]
2. The portion of the charge embraced in [ ][2]
3. The refusal of the plaintiff's offer.[3]

*Mr. E. Overton*, for the plaintiff.

That the receipt in a deed was not evidence of the payment of the purchase money against a stranger, counsel cited: Lloyd v. Lynch, 28 Pa. 419; Union Canal Co. v. Young, 1 Wh. 432; Rogers v. Hall, 4 W. 362; Bolton v. Johns, 5 Pa. 145; Henry v. Raiman, 25 Pa. 360; Clark v. Depew, 25 Pa. 515.

*Mr. H. F. Maynard*, for the appellees.

Counsel cited: Keichline v. Keichline, 54 Pa. 75; Seylar v. Carson, 69 Pa. 87; Pearsoll v. Chapin, 44 Pa. 9.

OPINION, MR. JUSTICE MITCHELL:

Where a party claims as a bona fide purchaser for value, against an asserted trust or fraud, it is incumbent on him to prove affirmatively the payment of the consideration relied on, and the mere receipt of his grantor or vendor, even though it be in a deed, will not be sufficient for that purpose against third parties. Such receipt is prima facie evidence against the grantor and those claiming under him, but against others it is no evidence at all: Lloyd v. Lynch, 28 Pa. 419; Redfield etc. Co. v. Dysart, 62 Pa. 62; Baum v. Tonkin, 110 Pa. 569. And, as the defence is founded on good faith, as well as consideration paid, the knowledge of the party is always evidence relevant upon that question.

Appellant is therefore clearly right in his second and third specifications of error, as general propositions of law. But, unfortunately for him, he has no case to which these propositions can apply. As was said in Redfield etc. Co. v. Dysart, supra, " where there is proof, however slight, of fraud, the burden of proving payment is thrown on the vendee, and other evidence than the receipt to the deed is necessary to establish the payment of the purchase money." But there must first be such proof, and more than a scintilla. A careful examination

Opinion of the Court.

fails to show any evidence in the present case which should permit a jury to find the alleged fraud. The principal evidence, the deposition of Benjamin Ball, and the notes of Hulett's testimony in another case, seems to us to have been admitted without sufficient ground laid for that kind of evidence; but, taking it as it stands, all that it proves is that Wheelock, an unquestioned creditor to a large amount, desired to take the land as security for his claim, and that Ball agreed to the sale as a means of passing the title for that purpose. No intent is shown to defraud other creditors, nor any knowledge that there were any such creditors. Nor is it even now alleged that in fact there were any other creditors except the present plaintiff with his secret note, not claimed to have been due at the time of the transaction between his father and Wheelock, not entered up till four years after it was apparently due and seven years after the sale to Wheelock, and not made known in the meantime, though the circumstances were such that, if it had been an honest debt, it is scarcely conceivable that it should not have been asserted at the time of the ejectment by Wheelock, to which not only his father, but plaintiff himself, was a party. The conduct of Wheelock subsequent to the sheriff's sale is equally clear of any evidence of fraud. The testimony of Hulett, and Wheelock's own letter, show that he admitted holding title subject to redemption by Ball; that he waited beyond the agreed time; and that " he hoped it would be redeemed," so that he would get his money. In all this there was nothing beyond the legitimate efforts of a creditor to obtain payment of his debt.

The case was altogether too barren of evidence of fraud to go to the jury, and, though the learned judge gave some reasons in which we cannot concur, his action in directing a verdict for the defendants was entirely right.

Judgment affirmed.