## Stewart's Estate.

Argued March 30, 1939. Before KEPHART, C. J.,
SCHAFFER, MAXEY, DREW, LINN and STERN, JJ.

*Carl E. Glock,* with him *Reed, Smith, Shaw & McClay* and *Julius Datler* for appellant, No. 34.

*H. F. Stambaugh,* with him *J. Randall Thomas,* for appellant, Nos. 148 and 151, and for appellee, Nos. 34 and 149.

*Thomas N. Griggs,* for appellant, No. 149, and for appellee, Nos. 148 and 151.

OPINION OF MR. JUSTICE DREW, April 24, 1939:

The Fidelity Trust Company, as Trustee, filed in the Orphans' Court of Allegheny County two separate accounts: one, under a deed of trust created by Henry S. A. Stewart, Sr., and the other, under a trust created by his will. The accounts were audited together, but separate decrees of distribution were entered, to which four appeals were taken, two of which were by Bertie Jeannette Stewart, wife of the cestui que trust under both trusts, Henry S. A. Stewart, Jr.; one by P. L. S. Corporation, an assignee of a certain portion of the income of Stewart, Jr., under the testamentary trust; and the other, by Stewart, Jr., himself. The questions raised by these appeals are interwoven one with the other, for which reason they were argued together; we will dispose of them in one opinion.

The deed of trust of Henry S. A. Stewart, Sr., dated October 10, 1921, provided, among other things, that the net income from the trust be paid "in monthly payments to my son, Henry S. A. Stewart, Jr., for and during the term of his natural life"; and that: "Said trust fund and the income therefrom shall not be liable for the payment of any debts of my said son, nor shall the same be liable to anticipation, execution or attachment in the hands of the said trustee." Henry S. A. Stewart, Sr., died September 12, 1922, leaving a last will, creating the other trust estate here involved, wherein he devised and bequeathed unto his trustee his residuary estate, after the payment of certain legacies, in trust, "for the following uses and purposes: (a) To pay the net income therefrom unto my son, H. S. A. Stewart, Jr., for and during the term of his natural life in monthly or quarterly instalments, as he may elect."

It appears from the testimony offered at the audit that prior to May 16, 1933, Stewart, Jr., had married Cecelia H. Stewart, and then Anita Quinby Stewart, both of which marriages terminated in divorce. Stewart, Jr., entered into written agreements to pay substantial monthly sums to each of these women, to be paid out of the income due him under the testamentary trust. On May 16, 1933, Stewart, Jr., entered into his third marital venture with Bertie Jeannette Stewart, a resident of the State of Florida and one of the appellants herein, and he separated from her on April 14, 1934. Three days prior to their parting he started a divorce proceeding in the State of Florida. The Master, on September 5, 1935, filed his report recommending that the divorce be refused, and on January 3, 1936, the Court, in its final decree, refused the divorce and directed that Stewart, Jr., pay to his wife, Bertie Jeanette Stewart, the sum of $325 monthly as permanent alimony for maintenance and support, and $4,750 as counsel fees, payable at the rate of $250 per month. Apparently realizing that the Court would reject his divorce application

on the Master's findings, Mr. Stewart left the jurisdiction of that Court, never has complied with its decree, removed his assets from Florida, has not returned thereto, and his whereabouts at the time of the audit were unknown.

On January 6, 1936, Stewart, Jr., in consideration of the sum of $5,000 assigned all his right, title and interest, for a period of ten years, or until his death, whichever may come first, in seventy-five per cent of the income which he was entitled to receive from the testamentary trust unto P. L. S. Corporation. This assignment was served upon the trustee on January 7, 1936. Stewart, Jr., although his divorce application was refused by the Florida Court, proceeded to Yucatan, Mexico, and there went through a marriage ceremony with the sister-in-law of the President of P. L. S. Corporation.

Bertie Jeanette Stewart, after reducing to judgment, on five occasions, the accrued payments due her for the period from January 3, 1936, to July 19, 1937, under the decree for alimony and counsel fees, issued thereon in the Court of Common Pleas of Allegheny County, Pennsylvania, five foreign attachments in assumpsit for a total amount in excess of $9,000, against Stewart, Jr., and summoned the trustee as garnishee. The first of these attachments was served March 7, 1936, and the last on August 9, 1937. An attachment against the income of the testamentary trust was also served on January 6, 1938, in favor of Thomas N. Griggs, Esq., and another on February 5, 1938, in favor of A. F. DeKreiges, Esq., attorneys for Stewart, Jr., for counsel fees.

The learned judge who audited the two accounts found that the assignment to P. L. S. Corporation was not fraudulent; and that Bertie Jeanette Stewart was entitled to fifty per cent, and Thomas N. Griggs, Esq., to the other fifty per cent in partial liquidation of his claim, of the income of the testamentary trust remaining in the hands of the trustee, after payment of claims of J. M. Stoner & Sons, Esqs., for counsel fees, the

amounts due under the agreements with Cecelia H. Stewart and Anita Quinby Stewart, the two former wives of Stewart, Jr., and the claim of P. L. S. Corporation under its assignment. The auditing judge also decreed that Bertie Jeanette Stewart was entitled to fifty per cent of the income of the spendthrift trust remaining in the hands of the trustee, less the sum of $2,250 which she admitted receiving on account of her claim; and that Stewart, Jr., was entitled to the other fifty per cent. Decrees of distribution were entered, and Bertie Jeanette Stewart and Stewart, Jr., filed exceptions. After argument, the court en banc dismissed the exceptions and affirmed the decree entered on the audit of the spendthrift trust; but sustained the exceptions to the decree entered in the testamentary trust as to P. L. S. Corporation assignment, and found that it was fraudulent. An amended decree was accordingly entered allowing Bertie Jeanette Stewart an additional fifty per cent of the amount previously decreed to P. L. S. Corporation, and the remaining fifty per cent was ordered to be applied, first, in full payment of the attachment of Thomas N. Griggs, Esq., and the balance in partial liquidation of the attachment of A. F. De-Kreiges, Esq. The amount allowed to Bertie Jeanette Stewart under the decree and amended decree in both trusts lacks over $4,000 of the total sum due her under her five attachments. From these decrees, four appeals were taken.

The first objection is to the finding that the assignment made by Stewart, Jr., to P. L. S. Corporation was fraudulent as to his creditors. The lower court en banc found that "a few days after Stewart knew or had reason to believe judgment would be rendered against him in Florida in this suit by his wife he executed an assignment of seventy-five per cent of his income to the P. L. S., a corporation which had been shortly prior thereto organized under the laws of the State of Delaware and whose officers reside in New York City. It was further

shown that close relations existed between the President of that Corporation and Stewart; that the latter, although refused a divorce from Bertie Jeanette Stewart, his wife, by the Courts of Florida, entered into a marriage in Mexico with a woman who was a sister of the wife of the President of the P. L. S.; that the consideration for the assignment to the P. L. S. was $5,000, which may be considered a small amount considering the possibilities of realization of a large sum on the part of the assignee. There was sufficient in the testimony to establish a presumption of fraud on the part of Stewart in executing this assignment which, if good, would be prior to his wife's claim against the income from Stewart's trust estate. . . . Neither the officers of the P. L. S. Corporation nor any one appeared in court to testify in support of the validity of the assignment, although full opportunity to do so was given." Clearly, the evidence was ample to support the finding of actual intent on the part of P. L. S. Corporation and Stewart, Jr., to defraud all his creditors. We have not the slightest doubt that the corporation was formed for that purpose.

Under the authority of both the statute 13 Elizabeth, chapter 5, section 2, which is part of the law of this Commonwealth, and the Act of May 21, 1921, P. L. 1045, section 9, insolvency need not be established to set aside a transfer, if actual fraud is shown: *Golder v. Bogash,* 325 Pa. 449. A husband cannot transfer his interest in property with the fraudulent intent of defeating his wife's rights: *Waterhouse v. Waterhouse,* 206 Pa. 433. Furthermore, no attempt was made to prove the consideration for this assignment, except by the statement contained in the instrument itself. This was not sufficient under the circumstances. "Where a party claims as a bona fide purchaser for value, against . . . fraud, it is incumbent on him to prove affirmatively the payment of the consideration relied on, and the mere receipt of his grantor or vendor, even though it be in a

deed, will not be sufficient for that purpose against third parties": *Ball v. Campbell,* 134 Pa. 602, 606. There is no merit in this assignment of error and it is dismissed.

It is objected further that the court below erred in permitting Bertie Jeanette Stewart, a resident of Florida, to recover fifty per cent of the beneficial interest of her nonresident husband in a spendthrift trust created by deed, the wife contending that she is entitled to collect her claim to the extent of one hundred per cent, and the husband claiming that she is entitled to no part of his income from the spendthrift trust. It must, of course, be borne in mind in disposing of this question that we are not here concerned with a suit to secure an order for maintenance and support for the wife of the cestui que trust, but rather with the attempt by her to enforce payment of a decree rendered by a foreign court of competent jurisdiction, to which we must give full faith and credit: *Stewart v. Stewart,* 127 Pa. Superior Ct. 567. We can find nothing in the deed of trust to indicate an intention on the part of the father who created it to enable his son, for whom he so amply and generously provided, to escape his legal and moral obligations to furnish necessary support for his lawful wife. The deed of trust, in addition to containing the spendthrift clause, provides, inter alia, that upon the death of the cestui que trust, the entire income of the trust is to be paid to the wife of such beneficiary. The very fact that the father made such generous provision for the wife after his son's death is proof positive that he did not intend to permit his son, during his lifetime, to deprive her of the necessaries of life. Moreover, in *Moorehead's Estate,* 289 Pa. 542, this Court expressly stated that as to claims of wives for maintenance and support, spendthrift trusts are invalid. In that case, we said (pp. 550-551): ". . . there remains a great controlling factor which cannot be justly avoided or ignored in the settlement of this particular case. That factor is found in the fact that there have arisen in this

proceeding circumstances not provided for by testatrix in her will, because not anticipated by her, which in themselves and in their results, plainly contravene the principles of public morals and public policy in their most general and significant application. . . . No hard search is required to find in this will an abundance of reasons for declaring that, to place upon it the interpretation respondent says it should have,—a construction, as we have said, the will in its entirety does not allow,—would be to place it in direct antagonism to every recognized claim of morality and to every purpose of public policy. To ignore or dismiss this controlling factor would be to attach the seal of judicial approval to the misconduct of this respondent against his deserted wife . . . (p. 552). In every civilized country is recognized the obligation, sacred as well as lawful, of a husband to protect and provide for his family, and to sustain the claim of the husband in the case at bar would be to invest him with a right to be both a faithless husband and a vicious citizen. This case reaches beyond the concern of the immediate parties to it. It affects the status of the family as being the foundation of society and civilization, and hence in a very certain sense is of wide public concern."

It is strenuously contended by counsel for Mr. Stewart that the Act of May 10, 1921, P. L. 434, only permits the claim of a wife, who is a resident of this Commonwealth, to the extent of fifty per cent of the beneficial interest of her husband in a spendthrift trust created by deed to execution on an order, decree or judgment of a court of Pennsylvania, and therefore the income of the spendthrift trust in the instant case cannot be reached by the claim of Mrs. Stewart, since she is a nonresident attempting to collect on a decree for alimony and counsel fees of a Court of Florida. Since we have declared that spendthrift trusts are against public policy in this State as to claims of wives for maintenance and support (*Moorehead's Estate,* supra), they

are entitled to recover against the beneficial interest of their husbands as though no spendthrift clause was contained in the will or deed creating them. This is, of course, particularly so in the instant case, as here there was no intention on the part of Stewart, Sr., that his son's wife was to come within the prohibitions contained in the deed of trust. In the case of an ordinary inter vivos trust, which contains no spendthrift clause, the beneficial interest of the cestui que trust is subject to attachment at the instance of his creditors: *The Girard Life Ins. and Trust Co. v. Chambers,* 46 Pa. 485; *Bremer v. Mohn,* 169 Pa. 91; *McCurdy v. Trust Co.,* 292 Pa. 407. So also must a wife be entitled to recover on a decree for maintenance and support entered by a court of competent jurisdiction to the full extent of her husband's interest in the trust, even though it contains a spendthrift clause, because such clause has no application to her. As to a wife, such a trust is an ordinary one. This is true as to trusts inter vivos, independent of the Act of 1921. That statute, as to trusts created by deed, is but an enabling one and affords an additional remedy to that which a wife had prior to its enactment. It is permissive and cumulative only; and is not exclusive. Since the passage of that act, a wife has, under similar circumstances as here under consideration, two remedies: first, she may, as heretofore, reduce to judgment the accrued payments due her under an order, judgment or decree, execute thereon and recover such accrued payments to the extent of one hundred per cent of her husband's beneficial interest in the trust; or, second, proceed under the Act of 1921, where the order, decree or judgment allowing her support requires "payments of stated sums at stated intervals," and levy or attach but fifty per cent of her husband's interest and such writ "shall remain a lien and continuing levy until the last payment due under such order, decree or judgment has been made, with costs." Mrs. Stewart, having proceeded under the first of these remedies, as an ordinary credi-

tor, she may reach one hundred per cent of the beneficial interest of her husband in the trust, but she can recover her claim only in so far as it has accrued. However, had she proceeded under the Act, she could have reached only fifty per cent of the income of the trust but her entire claim, whether accrued or not, would have become a continuing lien against the trust until it had been fully satisfied.

We cannot agree that the Act of 1921 was intended by the legislature to relate only to claims of resident wives based upon an order, decree or judgment of a court of this State. That statute specifically states "That whenever any court of competent jurisdiction has . . . entered a decree or judgment . . . the court may issue the appropriate writ of execution . . . ." Such language does not preclude the entry of a decree or judgment of a foreign jurisdiction in a court of this State and the issuance of an appropriate writ of execution by such Pennsylvania court. The lower court erred in failing to allow the claim of Mrs. Stewart to the extent of one hundred per cent of her husband's beneficial interest remaining in the hands of the trustee under the deed of trust, and the assignment of error to its failure so to do must be sustained.

It is argued that Mrs. Stewart should not be permitted to recover the counsel fees allowed by the Florida Court in the divorce proceeding out of the income of the spendthrift trust. This contention is without merit. Under the circumstances, counsel fees are an essential part of the wife's maintenance and support. To deny her counsel fees would, in many cases, be to render her defenseless and prevent her from asserting her right to support. "To deny a destitute wife the means to pay for process and professional aid is to deny her justice": *Brong v. Brong,* 129 Pa. Superior Ct. 224, 226. It was necessary to employ counsel in order to secure her decree, and, therefore, such fees are in the nature of maintenance and support and are recoverable as such.

On behalf of Mrs. Stewart it is objected that the court below erred in confining her claim to but fifty per cent of the income from the testamentary trust. Since the testamentary trust contained no spendthrift provisions, the entire income therefrom could be reached by the wife to secure payment of her decree, subject, however, to any prior legal claims, for the same reasons that the entire income from an ordinary trust inter vivos can be reached. Even where a testamentary trust contains a spendthrift clause, the entire income therefrom is made liable for the maintenance of the beneficiary's wife by section 19 of the Wills Act of 1917, P. L. 403. The right to reach the entire income from a testamentary trust, whether spendthrift or otherwise, under the circumstances of the instant case is not affected by the Act of May 10, 1921, P. L. 434. As we have already indicated, that Act merely gives the wife an additional remedy where she seeks to make future payments a lien on the trust. It did not, therefore, affect the existing right to reach the entire income from an ordinary testamentary trust, nor did it either expressly or by implication repeal section 19 of the Wills Act giving that right where the testamentary trust was a spendthrift one. "It is a fundamental principle that all statutes in pari materia, relating to the same subject, shall be construed concurrently whenever possible. . . . If two statutes can be made to stand together, effect should be given both as far as possible": *Nyce v. Board of Commissioners*, 319 Pa. 353. Hence, the wife may reach the entire income of the testamentary trust for the purpose of securing payment of instalments already due, and the court below erred in restricting her claim to fifty per cent.

We have carefully considered the other assignments of error and find no merit in them.

The record is remitted to the learned court below for the entry of proper decrees of distribution to conform with this opinion.