## Lippincott v. Lippincott. No. 2

*Highley & Semans*, for plaintiff.
*Charles E. Kenworthey*, for defendant.
*John B. Martin*, for garnishee.

GORDON, JR., P. J., May 1, 1941.—This is an action in foreign attachment instituted in the Court of Common Pleas No. 4, and transferred to this court under rule no. 1 of our rules of court. The suit is by a wife against her husband to recover arrearages due under a support order issued against him by the courts of the State of California, of which both plaintiff and defendants are residents; and the garnishee defendant is trustee in this jurisdiction of a spendthrift trust of the income of which the defendant husband is the cestui que trust for life. Judgment having been entered against defendant, the garnishee filed answers to the interrogatories disclosing the life interest of defendant, and acknowledging that the garnishee presently has possession of $299 of accrued income belonging to defendant. The answers also disclose the pendency of another writ of foreign attachment issued out of this court by plaintiff against her husband to recover earlier arrearages of support under the same order; that under it the garnishee has been paying one half of the income in satisfaction of that judgment, and that there remains due and subject to the earlier attachment a balance of $38.85. Defendant and garnishee do not question the liability of defendant's interest in the trust to respond to the present attachment, notwithstanding it is a "spendthrift" trust. Not only was this decided by us with respect to the identical trust in

the earlier proceedings between the same parties (Lippincott v. Lippincott et al., 28 D. & C. 28), but the same principle, namely, that a spendthrift trust is against public policy and void as to the obligation of a husband to support his wife, was declared by the Supreme Court in the later case of Stewart's Estate, 334 Pa. 356. The only question presented for our decision under the undisputed facts in this case, therefore, is the extent to which an attachment will reach the funds of such a trust coming into the garnishee's hands after the date of the service of the writ. Defendant contends: First, that, for reasons that will be noted hereafter, plaintiff is entitled to seize under the attachment only 50 percent of the funds in the hands of the garnishee; and, second, that the writ binds only those funds in its hands at the time of its service, together with any accretions that may come into the garnishee's hands up to the date of judgment against it. If this contention is correct, plaintiff will be entitled under the writ to judgment against the garnishee in the sum of $110.95, representing one half of the amount of income presently in the hands of the garnishee, less $38.85, the amount to which the fund is already subject under the earlier attachment.

Plaintiff, on the other hand, contends that the writ binds the entire life interest of defendant to the extent necessary to satisfy the judgment, and that she is entitled to judgment against the garnishee to the extent of 100 percent of the income, accruing as well as accrued, until the judgment against defendant is satisfied in full, subject, of course, to the lien of the earlier attachment.

We agree with plaintiff's contention upon this question. In the earlier attachment proceeding the only question before us was the validity of the spendthrift provision of the trust with respect to the wife's right to support. The garnishee moved to quash the writ, and in overruling the motion we said:

"In so holding, however, we do not determine the extent to which the husband's interest in the trust is liable to the wife's suit. That question will arise later in the proceeding, when and if a judgment is recovered by her, and execution is issued thereon. It will be sufficient to point out at this time that, since the Act of 1921 subjects the husband's interest to the claims of his wife only to the extent of 50 percent thereof, it may be that a more accurate statement of the public policy of this State is that such trusts are void to the extent of only one half of the husband's interests. Public policy is to be gathered from a consideration of both the written and unwritten law as interpreted and declared by judicial decision. Construing, on the one hand the decisions referred to above, in which spendthrift trusts are denounced as void and against public policy, and on the other the Act of 1921, which expresses the legislative intent to limit access by wives to such trusts to 50 percent of their husbands' interests, it may well be that the public policy of the State so limits the validity of such trusts. To hold otherwise would be to produce the incongruity of enabling foreign wives to reach the whole interest, and restricting resident wives to half the interest. This question, however, will not be before us for decision unless the case reaches the stage of execution on any judgment that may be recovered against defendant, and for this reason we expressly withhold any final decision of that question."

No appeal was taken from this decision and, instead of submitting for our decision the question thus expressly reserved by us for subsequent proceeding, the parties agreed to the entry of a judgment against the garnishee which subjected to the attachment only 50 percent of the income as it accrued. This, defendant now contends, constituted an election by plaintiff to proceed under the Act of May 10, 1921, P. L. 434, limiting attachments issued under it to 50 percent of the income of spendthrift trusts, and bars her from pro-

ceeding, under the law relating to attachments in general, against a full 100 percent of defendant's interest in the trust. In a subsequent opinion handed down by our brother Lewis (supra) in the earlier case, after the decision in Stewart's Estate, 334 Pa. 356, and when plaintiff sought a modification of the judgment against the garnishee so as to reach under that attachment 100 percent of defendant's interest in the trust, it was held that the judgment already entered by agreement did constitute such an election, and the modification prayed for was denied. While that decision, being unappealed, amounted to an election to pursue the remedy given by the Act of 1921 so far as that case is concerned, it did not constitute an election with respect to the new claim for different and additional arrearages in the later suit now before us. The debt here sued on arises out of a distinct and separate default, which had not occurred when the first suit was brought, and it is difficult to see how plaintiff can be said to have made an election with respect to a remedy, the right to which did not exist at the time of the election, and which only arose through the subsequent defaults of defendant in complying with the support order.

The right of a plaintiff to reach 100 percent of defendant's income under the trust is clear under the decision in Stewart's Estate, supra, and we think it is equally clear under the case of Butler County National Bank v. MacMullen et al., 292 Pa. 556, that the attachment binds the fruits of her husband's entire interest in the trust, past and prospective. The attachment is of his interest, and remains until the judgment against him is satisfied in full. In that case a life interest in a testamentary trust was attached by a judgment creditor under two attachments, one, summoning the executors of the decedent's estate as garnishee, and the other, the trustee of the trust. The judgment against the defendant there amounted (together with interest) to $14,278.74, and the answers of the executor garnishees to the interrogatories disclosed that they had in their

possession $1,235.25 of income belonging to defendant. The trustee garnishee, in its answers, disclosed nothing in its hands at the time the writ was served, but the verdict of the jury disclosed that the garnishee had received from the executors, after the service of the writ, upwards of $48,000 of the trust res. The record in the case also disclosed that when the verdict was rendered against the trustee it had not yet received any income to which defendant would be entitled under the trust. On the verdicts rendered by the jury the lower court entered judgments against both the executors and trustee in the full amount of the debt ($14,278.74), " 'to be levied on the interest of the defendant, George W. MacMullen, in the estate of Katherine R. MacMullen, deceased, and to be paid as the interest of George W. MacMullen is due and payable.' " The lower court also ordered " 'the plaintiff however to be restrained from collection until the interest of George W. MacMullen in the estate of Katherine R. MacMullen is due and payable.' " The Supreme Court held that the form of verdict and judgment was bad as to the executors, but not as to the trustee. It therefore modified the judgment against the executors so as to read: "It is ordered that judgment be entered on the verdict in favor of plaintiffs and against the garnishee in the sum of $1,235.25, the amount of money in the hands of the garnishee payable to defendant . . .", and affirmed the judgment against the garnisheed trustee. The judgment against the executors was held to be excessive because money belonging to defendant in their hands was limited and fixed in the amount indicated. In affirming the judgment against the trustee, however, the court said:

"So far as the judgment against the trustee is concerned, we are of opinion that it is in proper form, as the amount coming into the hands of the trustee could not be ascertained at the time of the verdict: Bouslough v. Bouslough, 68 Pa. 495; Maurer v. Kerper, 102 Pa. 444."

This case rules the question before us, and judgment will, therefore, be entered in favor of plaintiff and against the garnishee in the full amount presently due plaintiff under her judgment against defendant, and execution will be limited to future income as it accrues and comes into the hands of the garnishee.

Two other questions remain to be noted: The first relates to the validity of the claim for $300 exemption filed by defendant, and the second is raised by a petition and answer, in which defendant asks that the execution be restrained to 50 percent of the income of the trust. With respect to the first of these questions, it is well settled that the Debtors' Exemption Act of April 9, 1849, P. L. 533, does not apply to proceedings in foreign attachment, because it is only intended to be in relief of resident debtors: Yelverton et al. v. Burton, 26 Pa. 351; McCarthy's Appeal, 68 Pa. 217. As to the second question, we are satisfied that we have no power to control the execution merely because defendant may have no income other than that which he derives from the trust here in question. Defendant's petition avers, in effect, that he is destitute except for the income of the trust; that the support order of the California courts is greater than the income. On the other hand plaintiff, in her answer to the petition, avers, in effect, that defendant either has other sources of income, or, if he actually has not, he is able to earn additional moneys and refuses to do so. The factual issue thus raised by the pleading, in this respect, is clearly immaterial to the question before us. The rule which requires us to give full faith and credit to the judgment of courts of other jurisdictions precludes our questioning either the wisdom or justice of the order of the California courts. The matters set up by defendant in his effort to secure relief from the consequences of that order are properly cognizable only by those courts. We have no reason for believing that the order against him was improvidently made, or in any way works a hardship upon him, nor have we any right to delve into that

question. No doubt the facts that he advances here were, or could have been, presented to and fairly heard by the courts of California. They certainly should have been, and if defendant's situation has so changed since the order was made as to justify a modification of it an application to that end must be made to the tribunal that has issued the order. So long as it stands, we have no jurisdiction to modify it by the exercise of a supposed equitable control over the processes of execution, or to deprive plaintiff to any degree of her rights under the judgment she holds against her husband. Defendant's request for a limitation of the execution to 50 percent of the income of the trust cannot, therefore, be allowed, and it is adjudged that the garnishee has in its possession as trustee of the estate of Anna Janney Lippincott a fund, to the income of which defendant is entitled during his life; that the garnishee has presently in its possession the sum of $299, representing accrued income of said trust, and belonging to defendant, which said accrued income is subject to an existing and outstanding execution in the sum of $38.85; and that, subject to said existing and outstanding execution, the interest of the said defendant in the income of said trust is subject to the execution issued in this case to the extent of $3,687.40, being the amount of the judgment recovered by plaintiff against defendant herein.

Accordingly, judgment is now given in favor of plaintiff and against the garnishee in the sum of $3,687.40 to be levied on the interest of defendant, James Janney Lippincott, in the trust estate of Anna Janney Lippincott, and to be paid as the interest of the said James Janney Lippincott is and shall become due and payable; and plaintiff is restrained from collecting from the garnishee any sums of money under this judgment until and as the said interest of the said James Janney Lippincott therein becomes, from time to time, due and payable, from which are to be deducted garnishee's costs, etc., of $13.50.