**Commonwealth ex rel. v. Dougherty**

*Albert H. Friedman*, for Commonwealth.

*David F. Maxwell*, for defendant.

WINNET, J., March 3, 1942.—This case was initiated on the petition for support of Martha McL. Dougherty against her husband, James J. Dougherty. On October 7, 1941, the case was heard by Judge Shmidheiser. Respondent was not present because of illness. His son, James, by a former marriage, opposed petitioner's request. On the basis of testimony that respondent is a pensioned policeman receiving $96.25 per month, and petitioner herself was employed, earning $85 per month, Judge Shmidheiser made an order of $5 per week.

The order not having been paid, a warrant of seizure was issued against the pension fund. Respondent filed a petition to show cause why the warrant of seizure should not be quashed and the order of Judge Shmidheiser of $5 per week be vacated. A full hearing was held before me on February 16, 1942, on the warrant of seizure and the petition of respondent.

At the hearing respondent challenged plaintiff's right to an order. Since no appeal was taken from Judge Shmidheiser's order we ordinarily would not hear again testimony on this issue. An order for support unappealed from carries with it the finality of any other judgment. Only where the conditions and circumstances

change may such an order be increased, reduced, or vacated: Commonwealth ex rel. v. Crandall, 145 Pa. Superior Ct. 359. Notwithstanding, a full hearing was afforded respondent since he was not present at the first hearing nor represented by counsel, although his son was present and opposed the application.

There can be no doubt that the original order entered by Judge Shmidheiser was fully warranted. Petitioner, age 46, and respondent, age 61, were married on May 31, 1934. This was respondent's second marriage. At that time petitioner was employed as a stenographer for the traffic engineer of the city, making $1,600 per year. At his insistence she gave up the job and made a home for him. They lived together until 1940 when the separation took place. The cause of the separation was the mental condition of respondent; he was obsessed with the idea that petitioner was entertaining other men. He accused her of attempting to poison him with arsenic. She testified, "He would come sneaking up the side yard at night, on his way home from business, and pop in on me all of a sudden in the kitchen, apparently trying to find somebody, but didn't find anybody." Defendant's illness was confirmed through a letter of a physician.

I find as a fact that the separation was due to no fault on the part of petitioner and that respondent was the cause of it.

Petitioner, therefore, is entitled to support. Respondent challenges this by claiming that, since she is not a public charge and is self-supporting, respondent should not be made to support her. There has been a growing misconception of the right of a wife to support from her husband. It is not based on The Support Law of June 24, 1937, P. L. 2045. It is not necessary as a condition for support that it be proven that a wife is or is likely to become a public charge. Support flows from the obligation undertaken in the marriage vow and contract. From very early Colonial days the obligation

was enforced by statute for the benefit of indigent parents and children. The Act of January 12, 1705, 2 Pa. Stat. at L. 251, was entitled: "An Act for the relief of the poor." The Act of June 13, 1836, P. L. 539, was also a "Poor Law" in which the obligation to support indigents was enforced. The Act of April 13, 1867, P. L. 78, was the first departure from this theory. The obligation to support was not placed on indigency but was founded on the obligation of a husband to support his wife and children: Commonwealth v. Hawkins, 80 Pa. Superior Ct. 520. Judge Keller stated (p. 522):

"It [Act of 1867] was expressly declared to be a remedy in addition to the poor laws and was enacted for the relief of deserted wives and children."

The step was apparently so radical the legislature limited the amount of support to "not exceeding $100 per month", and it was not until 40 years later, in the Act of March 5, 1907, P. L. 6, that the limitation was omitted. In the Act of April 15, 1913, P. L. 72, the words "without limitation as to the amount" were added to the law in defining the right to support.

The order is clearly now dependent upon the standard of living to which the wife was accustomed and the husband's ability to pay: Commonwealth ex rel. v. Binney, 146 Pa. Superior Ct. 374. Respondent himself recognized petitioner's right to support by voluntarily paying her $10 per week for a long period after the separation. It is true at that time he was making approximately $200 per month; now he is on pension receiving $100 per month, less some deductions. Petitioner was herself, at the time of the original hearing, earning $85 per month, and the order of Judge Shmidheiser was, therefore, a reasonable one under the circumstances. Respondent had taken her away from a good job. She had married him and given him six years of her life, and through no fault of her own that married life has been disturbed and broken. She still has to maintain her home. She even pays a small amount in school for respondent's younger son. She is

struggling to maintain the standard to which she is accustomed and entitled to live and does not earn sufficient to do so. The $5 per week was a fair and reasonable amount to supplement her earnings. The fact that petitioner is gainfully employed does not deprive her of her right to support by her husband. That duty is imposed upon him by law: Commonwealth ex rel. v. Liuzzi, 142 Pa. Superior Ct. 239, 241.

The evidence discloses that in January 1942 she obtained employment at approximately $100 per month. Since one of the circumstances taken into consideration in imposing the prior order was the earnings of petitioner of $85 per month, I direct that as of January 6, 1942, the date of her new employment, the order be reduced to $3.50 per week, and the arrears which have accumulated at the rate of $5 per week since that time be remitted.

This order may mean a hardship to respondent. His needs are also great. All orders for support involve a hardship. One salary or income cannot be divided and ordinarily be made to support two or more persons in separate homes without a hardship to everyone concerned. Respondent is no exception to this rule. He, however, should bear the real burden as it is his fault that there are two separate homes to be maintained.

The motion to quash the warrant of seizure is based on the ground that it is an attachment proceeding against a government agency. Counsel has cited the law to show that funds in the hands of the government or a government agency are not attachable: Bulkley v. Eckert et al., 3 Pa. 368; Fairbanks Co. v. Kirk et al., 12 Pa. Superior Ct. 210. As a general proposition there can be no doubt about this. We have involved, however, a retirement or pension fund. This is not a collection of past salaries, which are unattachable, as is stated in Personal Finance Co. v. Clement et al., 20 D. & C. 283, 285. It is accumulated savings or an investment and is no different than any other savings fund or annuity

which might be purchased by any private citizen with regular deductions from his salary. There is nothing in the nature of an annuity or pension fund which exempts it from attachment unless it is specifically exempted by express legislative enactment or by reason of some special circumstances relating to the particular fund which might exempt it for reasons of public policy. The contention is made that public policy should exempt this fund because it is being held by a quasi-governmental agency. The City of Philadelphia Police Pension Fund is a private corporation. It is governed by the police themselves along with representatives from city council which yearly appropriates money to this fund for the purpose of retirement of policemen and paying pensions. In 1942 the appropriation of city council was $850,000. Even though this corporation is not technically a government agency, nevertheless it is performing a government function. This is clearly indicated in the language in Commonwealth of Pennsylvania, State Employes' Retirement System v. Dauphin County et al., 335 Pa. 177, and Bausewine v. Philadelphia Police Pension Fund Assn., 337 Pa. 267.

As a matter of public policy, funds in the hands of government agencies are not subject to attachment. The reasons are well stated by Judge Gordon in Personal Finance Co. v. Clement et al., supra (p. 284) :

"It is well settled that municipalities and their funds are not subject to attachment because, for reasons of public convenience, the government cannot be embarrassed in its functioning by being subjected to the annoyance and uncertainties arising out of quarrels between persons entitled to payment from public funds and others claiming a right therein by attachment, assignment, or otherwise."

The public interest, however, in not allowing attachments or assignments should not apply in attachments for support. The obligation of a person to support his family is a sacred one which a court must jealously protect and enforce. Any embarrassment to a govern-

ment agency by such attachments is over-balanced by the social interest in enforcing the obligation to support wives and children.

The same reasons which prompted the decision in holding that spendthrift trusts were subject to attachment in favor of a family compel us to say that a pension fund held by a governmental agency is likewise so attachable. The language of Mr. Justice Drew in Stewart's Estate, 334 Pa. 356, 364, is peculiarly applicable:

"In every civilized country is recognized the obligation, sacred as well as lawful, of a husband to protect and provide for his family, and to sustain the claim of the husband in the case at bar would be to invest him with a right to be both a faithless husband and a vicious citizen. This case reaches beyond the concern of the immediate parties to it. It affects the status of the family as being the foundation of society and civilization, and hence in a very certain sense is of wide public concern."

The New York courts sustained the right of the wife to attach the police pension fund in the face of a statute which specifically exempted the fund from attachment "on behalf of any creditor or person having or asserting any claims against . . . any pensioner of said fund": Zwingmann v. Zwingmann, 150 App. Div. 358, 134 N. Y. Supp. 1077, and on page 360:

"The whole purpose of the statute is served when the fund is preserved for the use of the pensioner and those legally dependent upon him for support and maintenance; when it is held intact for the care of the woman who is, in law, but a part of himself and entitled, with him, to share in the pension."

The warrant of seizure is confirmed. The order entered on October 7, 1941, is modified as of January 6, 1942, to be $3.50 per week. There is due up to January 6, 1942, $65, and from January 6 to March 3, 1942, $28, or a total of $93. The warrant of seizure is con-

firmed to the extent of $93 for arrearages, and the Philadelphia Police Pension Fund to be liable for the payment of this amount in addition to $3.50 per week until further order of this court.