Frailey Township School District, Appellant, *v.* Schuylkill Mining Company, Appellant.

Argued January 7, 1949. Before MAXEY, C. J., DREW, STERN, PATTERSON, STEARNE and JONES, JJ.

*Calvin J. Friedberg*, with him *James D. Williamson* and *Hicks, Williamson & Friedberg*, for defendant.

*Charles L. Frank*, with him *Alvin E. Maurer, Jr.*, for plaintiff.

OPINION BY MR. JUSTICE JONES, March 21, 1949:

The plaintiff school district sued in assumpsit to recover from the defendant company unpaid school taxes on certain real estate for each of six consecutive fiscal years on the ground of the defendant's alleged personal liability for such taxes.

The statement of claim embraced six separate causes of action, one for each respective year's unpaid taxes, the several causes being separately set out under appropriate headings. The defendant answered to the merits and under new matter averred, with respect to the first two causes of action, that (1) the taxes in-

cluded therein were the same as had been returned by the tax collector of the school district to the county commissioners for non-payment on a date prior to the institution of the suit, and (2) the claims based thereon were barred by the Statute of Limitations (Act of March 27, 1713, 1 Sm. L. 76, Sec. 1, 12 PS § 31). To the remaining four causes of action, the defendant answered that the property upon which such taxes were assessed and levied had been sold by the county treasurer on tax liens on October 14, 1942 (prior to the levy and assessment of any of the taxes covered by the remaining four causes of action), and that the property had been purchased at such sale by the county commissioners. The defendant further alleged that it had made certain payments on account of the delinquent taxes in suit.

The plaintiff, in its reply to the new matter, did not dispute the sale of the property to the county commissioners, as alleged by the defendant, and, further, admitted the payments on account of the taxes in suit as averred by the defendant. As the material facts were either expressly admitted or undisputed, the plaintiff moved for judgment on the pleadings. After argument, the learned court below entered *six* separate judgments, viz., two for the plaintiff and four for the defendant. From those judgments, the plaintiff and the defendant have each taken but *one* appeal which gives rise to an attendant procedural difficulty.

It was, of course, entirely proper for the plaintiff to combine in one suit a number of similar causes of action triable in the same county: see Rule 1020(a) of the Rules of Civil Procedure (354 Pa. xxxix). Such had previously been the practice under existing law: see *Commonwealth v. Turner Supply Company*, 352 Pa. 288, 290, 42 A. 2d 598; cf. also *Philadelphia v. Heinel Motors, Inc.*, 346 Pa. 528, 530-531, 31 A. 2d 104. But, the trial court should not have entered more than one judgment. Instead of entering two separate money judgments for

the plaintiff on the first two causes of action and four separate judgments for the defendant on the remaining causes, as was done in the instant case, the court below should have entered one judgment for the plaintiff in the aggregate amount of the first two claims. From such a judgment, the plaintiff could then have appealed, assigning for error the failure of the court to include in the judgment anything on account of the other four causes of action pleaded; and, the defendant, likewise, could have appealed, assigning for error the court's rendering judgment for the plaintiff for the taxes embraced by two of the causes of action. As matters now stand, it is impossible to say from which of the six separate judgments the plaintiff and the defendant, respectively, has appealed. A single appeal is incapable of bringing on for review more than one final order, judgment or decree: see *Jordan v. Eisele*, 273 Pa. 95, 98, 116 A. 675; and *Cauley v. Pittsburgh, Cincinnati and St. Louis Railway Company*, 95 Pa. 398, 403. Consequently, if we are to reach the merits of any of the matters in suit, we cannot do better than arbitrarily allocate the plaintiff's appeal to the first of the judgments entered for the defendant and the defendant's appeal to the first of the judgments entered for the plaintiff: cf. *Roberts's Appeal*, 92 Pa. 407, 419. Obviously, that leaves unappealed, one judgment in favor of the plaintiff and three in favor of the defendant. But, happily in the circumstances here present, the situation so produced does not work any hardship. The merits require that the action of the court below be affirmed. Nonetheless, we have deemed it appropriate to point out the proper appellate practice as well as the procedural course which the trial court should have followed.

The defendant company has not pressed upon us the contention it made below that the plaintiff's first two causes of action were barred by the Statute of Limitations. We shall not, therefore, make further reference

to that matter, especially as the learned court below properly rejected the contention. In such connection, see *Erny's Estate*, 337 Pa. 542, 545-546, 12 A. 2d 333; also *City of Philadelphia v. Atlantic & P. Tel. Co.*, 109 Fed. 55, 56 (U. S. C. C. E. D. Pa.).

In support of its second contention with respect to the plaintiff's first two causes of action, the defendant argues that the plaintiff school district may not recover a judgment for taxes in an action in assumpsit brought after the real estate against which the taxes were levied had been returned to the county commissioners for non-payment of the particular taxes. Our decision in *Blythe Township School District v. Mary-D Coal Mining Company, Inc.*, 354 Pa. 407, 47 A. 2d 535, rules that matter flatly against the defendant's contention. In the *Blythe Township* case, the *sole* question, as stated by Mr. Justice DREW for this Court (p. 409), was "whether or not section 2 (b) of the Act of 1939 [June 20, P. L. 508], authorizes a taxing authority, such as plaintiff, to bring an action in assumpsit against a delinquent taxable to recover unpaid taxes assessed and levied against the real estate while the taxable was the registered and record owner of the property, although at the time of suit, title to the property had passed to the county commissioners by reason of a tax sale."

The only difference (immaterial, as will appear) between the instant case and the *Blythe Township* case is that here the suit was brought under Sec. 21.(b) of the Act of May 25, 1945, P. L. 1050 (72 PS § 5511.21(b)), which provides that "In addition to all other remedies provided by this act, each taxing district shall have power to collect unpaid taxes from the persons owing such taxes by suit in assumpsit or other appropriate remedy. . . . The right of each such taxing district to collect unpaid taxes under the provisions of this subsection shall not be affected by the fact that such taxes have been entered as liens in the office of the prothono-

tary, or the fact that the property against which they were levied has been returned to the county commissioners for taxes for prior years." The section just quoted is identical with Sec. 2(b) of the Act of 1939, supra, except for the last five words (viz., "for taxes for prior years") which were added by the 1945 Act. The defendant contends that the added words mark an intentional differentiation which is decisive of the controversy in the defendant's favor; and, while conceding "that the taxing district may sue in assumpsit for enforcement of current taxes even though the property against which these taxes were levied had been previously returned to the county commissioners because of nonpayment of taxes levied during preceding years", the defendant argues that "the taxing district has no right to enforce collection by a suit in assumpsit of any tax when the subject property has already been returned to the county commissioners for nonpayment of the identical tax." The lower court appropriately characterized the argument as a "strained and specious interpretation", and saw in the added words an "intent of the Legislature . . . to enlarge upon the remedies afforded the taxing districts rather than to limit such remedies." Whether or not an enlargement of remedies was so intended, certainly there is nothing in Section 21(b) of the Act of 1945 which puts a further limitation upon the remedies provided. The exclusory provision of the last sentence of Sec. 21(b) was designed to make certain that no one could reasonably contend that the right of a taxing district to sue in assumpsit was in any way affected by the two specific situations therein mentioned. It follows that the plaintiff was properly entitled to judgment on the first two of its specified causes of action.

The remaining four causes of action stand in an entirely different position. None of the taxes embraced thereby was assessed or levied while the defendant com-

pany was the record title owner of the property involved. As the plaintiff admits, the defendant ceased to be the owner on October 14, 1942, when the property was sold to the county commissioners by the county treasurer at a tax sale; and the taxes covered by the causes of action now under consideration were levied for subsequent years: see *Reading Trust Company v. Campbell,* 159 Pa. Superior Ct. 197, 200-201, 48 A. 2d 72. The plaintiff contends, however, that inasmuch as the property has not yet been resold by the county commissioners and as the defendant's right to redeem still endures (Act of July 28, 1941, P. L. 535, 72 PS §6105.1 et seq.), the defendant continues, in the eyes of the law, to be the owner for tax purposes. This contention cannot be sustained.

Personal liability for taxes on real estate in Pennsylvania is an incident of record ownership of land at the time of the assessment and levy of the taxes covered by the liability: *Pennsylvania Co. for Insurances, etc., Trustee, v. Bergson,* 307 Pa. 44, 49-50, 159 A. 32. Cf. also *Blythe Township School District v. Mary-D-Coal Mining Company, Inc.,* supra, at p. 411, and *Provident Trust Co. v. Judicial B. & L. Assn.,* 112 Pa. Superior Ct. 352, 356, 171 A. 287. But, in no event does personal liability continue to attach for taxes assessed and levied *after* the owner's title to the land has been terminated by a treasurer's sale of the property to another even though a right of redemption does exist for a time in the former owner. No other conclusion could properly be drawn from the pertinent statutes and decisions.

The Act of May 29, 1931, P. L. 280, as amended, 72 PS § 5971a. et seq., prescribes the procedure to be followed when a county treasurer sells land for unpaid taxes. While it is clear from Secs. 15, 16 and 17 of that Act (72 PS §§ 5971o., 5971p. and 5971q.) that the property purchased by county commissioners at a treasurer's sale is not exempt from charges for taxation

over the redemption period (*Erie Appeal,* 159 Pa. Superior Ct. 18, 25, 46 A. 2d 592), "Such property shall not, so long as it remains the property of the county, be charged in the duplicate." However, during the redemption period, the county commissioners are required to charge in a book (to be kept of land so sold) the "like county, city, borough, town, township, school and poor taxes, as would have been chargeable against the land had the same not been purchased by the county commissioners": Sec. 16; and, upon redemption of the land, the redeemer is required to pay the aggregate amount of all unpaid taxes on the property including the charges for taxation, made and not paid, during the period of redemption. The liability, however, accrues as a condition of the right to redeem and not because of any continuing personal liability on the former owner as such.

Sec. 17 of the Act of 1931, supra, further provides that, after redemption by the former owner or upon a sale by the county commissioners, the "property shall be charged by the assessor in the name of the last purchaser or redeemer, and *such lands shall again be liable for taxes as other lands.*" (Emphasis supplied.) Furthermore, under Sec. 21(b) of the Act of 1945, supra, whereon the instant suit is based, the action in assumpsit therein authorized for the recovery of taxes is a suit against the party "owing such taxes". Obviously, there can be no such person until there has been a due assessment followed by a formal tax levy; and, as we have seen, there is neither an assessment nor levy of taxes on property held by the county commissioners. Until those required steps of the process of taxation are taken, no tax liability is imposed and, hence, no personal liability therefor can be asserted.

In *Benzinger Township School District v. Elk County,* 50 D. & C. 449, in an opinion which both this Court and the Superior Court have specifically approved as well-reasoned (see *Zerbe Township School District v.*

*Thomas,* 353 Pa. 162, 170 44 A. 2d 566, and *Erie Appeal,* supra, at p. 26) it was held that, where property purchased by county commissioners at a tax sale is later sold by them for a sum in excess of the aggregate unpaid taxes due all participating taxing authorities, the excess belongs to the taxing authorities (*and not to the former owner*) in proportion to their tax claims. That decision, which was manifestly correct, goes to confirm our present conclusion that a treasurer's sale of land for non-payment of taxes leaves no interest, and consequently no continuing personal liability for further taxes, in the former owner except the right to redeem for a certain period of time on statutorily specified conditions.

The judgments subject to the several appeals are affirmed at the costs of the respective appellants.