Clark, Appellant, *v.* Clark.

Argued March 25, 1963. Before BELL, C.J., MUS-MANNO, JONES, COHEN, EAGEN, O'BRIEN and ROBERTS, JJ.

*Carl Brandt,* with him *Brandt, Riester, Brandt & Malone,* for appellants.

*Malcolm Anderson,* with him *Robert Grier, II* and *Grier, Duggan, Hampsey & Ludwig,* for appellees.

OPINION BY MR. JUSTICE ROBERTS, June 4, 1963:

The instant controversy between Jane C. Clark, appellant, and her husband, J. Leonard Clark, appellee, comes to us out of a tangle of eight separate actions instituted by appellant,[1] arising from the same factual setting, and from which a single appeal was taken.[2]

The parties were married on May 10, 1945, and are the parents of one daughter, born on July 1, 1948. Prior to their marriage, the husband's father, David L. Clark, died (February 3, 1939) leaving a will dated September 9, 1937, which created a spendthrift trust for the benefit of his children. The presently material portions of the will provide: "TWELFTH: All the rest, residue and remainder of my estate, . . . I give, devise and bequeath . . . in trust . . . to pay . . . the net income received therefrom" (to named children, including appellee).

"As each of my said children attains the age of fifty (50) years, the trust as to his or her proportionate

---

[1] Involved are two actions of assumpsit; two in equity; two judgments by confession and two attachment executions.

[2] Even though in this instance we render a decision on the merits, taking one appeal from several judgments and/or orders is not acceptable practice and is discouraged. See *Frailey Township School District v. Schuylkill Mining Co.,* 361 Pa. 557, 64 A. 2d 788 (1949).

share of the principal shall terminate and the trustees shall assign, transfer and set over unto said child, his or her proportionate share of said principal."

"THIRTEENTH: Neither the principal nor the income bequeathed under this Will shall be assigned or anticipated by the beneficiaries named therein, nor shall the same be subject to attachment or execution in the hands of the Executors or Trustee."

In February of 1956, the Clarks separated and have been living apart since that time. On April 30, 1957, they entered into a separation agreement, by the terms of which the husband (then age 46) agreed to pay his wife $600 per month for her support and that of their daughter. Such payments, however, were reduced to $400 per month until August 1, 1961, and he agreed to make a lump payment of $10,000 on that date. He undertook also, prior to his reaching age 50, "to establish and create a Trust for the benefit of his wife and/or their daughter Linda Jane Clark" either in the amount of $90,000 or "30% of the amount to which the husband may be entitled from the trust in his said father's estate, less $10,000.00," whichever should be greater. He further agreed "to effect the payment into such [proposed] Trust, from the amount to which he will be entitled from the principal of the Trust being administered by" the fiduciaries, "in the estate of" his deceased father.[3] The agreement authorized the con-

---

[3] The agreement contained this additional provision: "In order to guarantee the creation of the new Trust provided for in the preceding paragraph, the husband agrees, forthwith upon the execution of this Agreement, to take such action as may be necessary, *to the extent legally possible*, to create such Trust before the date his interest shall be released to him from the Trust being administered by Fidelity Trust Company, Pittsburgh, Pennsylvania, in the estate of the husband's deceased father, David L. Clark, and to direct such Trust Company *to pay directly into such new Trust* the money and/or securities necessary to effect the creation of such

fession of judgment against the husband upon his default.

On September 13, 1957, the husband entered into an agreement with a bank, creating the trust for his wife and daughter, as outlined in the separation agreement of April 30, 1957. (However, by letter of November 5, 1959, to his corporate trustee, he revoked this trust arrangement.) The husband continued to pay his wife $400 per month until April of 1959, but not thereafter. On October 1, 1959, the wife instituted an equity proceeding against her husband for the support of herself and daughter, and for the enforcement of the agreement of April 30, 1957. By adjudication filed March 30, 1960, the chancellor awarded the wife $450 per month[4] plus $2,700 in arrearages, but held that the agreement was an invalid attempt to assign an interest in the spendthrift trust which could not be enforced. No appeal was taken from that adjudication, and it is not before us for review.

Some of the existing actions were instituted by the wife on March 30, 1961, and on April 3, 1961—the day

Trust, *without having such money* and/or securities *pass to the husband* prior to the setting up of such new Trust." (Emphasis supplied.)

[4] Since the trustees were not parties to the suit, the court held that it had no jurisdiction to cause its support order to be a lien against the husband's (50%) interest in the spendthrift trust, in accordance with the Act of May 10, 1921, P.L. 434, §1, 48 P.S. §136 (1930).

Also, income of a spendthrift trust is ordinarily "liable for the support of anyone whom the income beneficiary shall be under a legal duty to support" under the Estates Act of 1947, April 24, P.L. 100, §12, 20 P.S. §301.12 (1950). See also *Morton v. Morton*, 394 Pa. 402, 147 A. 2d 150 (1959); *Stewart's Estate*, 334 Pa. 356, 5 A. 2d 910 (1939).

The record discloses, however, that by stipulation the parties have arranged for the payment of support in compliance with the order of the court of March 30, 1960.

the husband attained age 50—she filed duplicates of the earlier suits in assumpsit and in equity.[5]

The pivotal question presented is whether the husband's distributive share of principal in the spendthrift trust, while in the hands of the trustees after he attained 50, is subject to attachment for the satisfaction of claims which the wife asserts under the agreement of April 30, 1957. The determination of this issue is governed by the intention of David L. Clark as expressed in his will creating the trust for his children. This Court, in *Sproul-Bolton v. Sproul-Bolton*, 383 Pa. 85, 93, 117 A. 2d 688, 692 (1955), stated: ". . . [O]rdinarily the principal of a trust fund, the right and title to which has vested in the beneficiary and which has become payable to him, is subject to attachment by his creditors, and . . . it is only when the donor or testator who created the trust has by clear language expressed the intention that the immunity from attachment or alienation is to continue until actual payment of the principal to the beneficiary that such protection in transit will be accorded legal support."

No principle in the law of wills and trusts is more firmly and clearly established than that the intention of the testator or settlor must prevail. *Walton Estate,* 409 Pa. 225, 186 A. 2d 32 (1962). Equally fundamental is the legal precept that the owner of property ". . . may do as he pleases with it provided the disposition be not to unlawful purposes, and what he may do himself he may do by agent while living, or by executor after death." *Dulles's Estate,* 218 Pa. 162, 163, 67

---

[5] The assumpsit actions are for damages in the amount of the proposed trust. In the equity suits, like damages are claimed, and, in the alternative, the wife seeks enforcement of the husband's agreement of September 13, 1957, which he later revoked. Judgments were entered by confession, and attachment executions were issued against the trustees of the spendthrift trust.

Atl. 49 (1907); accord, *Borsch Estate,* 362 Pa. 581, 67 A. 2d 119 (1949).

In ascertaining the intention of the testator or settlor, it has been frequently said that no will has a brother, twin brother, or double. See, e.g., *Jones Estate,* 410 Pa. 380, 190 A. 2d 120 (1963). "Each will is its own best interpreter, and a construction of one is no certain guide to the meaning of another: . . ." *Williamson's Estate,* 302 Pa. 462, 466, 153 Atl. 765, 766 (1931). Equally appropriate is the Court's observation in *Nicholson Estate,* 355 Pa. 426, 430, 50 A. 2d 283, 284 (1947), that "every will, in a sense, is unique. Precedents are of little value."

Examination of the trust provisions, in the light of the foregoing guides, clearly discloses an unqualified direction that no part of the trust, principal or income, "shall be assigned or anticipated by the beneficiaries." Testator used plain and emphatic language in precisely expressing his firm intention that no portion of his gift shall be assigned or anticipated. His desire and purpose, as his words reveal, was to foreclose and make entirely impossible, by any device, the assignment or anticipation of either principal or income. Under the specific terms of the trust, its creator made it manifestly clear that his beneficiaries had no right or authority to make any binding commitment of either principal or income during the life of the trust. It is difficult to conceive how he could have been more articulate in stating his intention.

Having thus firmly provided that his children could not reach the trust assets by assignment or anticipation, he further implemented that restriction with the explicit direction that his gift shall not be "subject to attachment or execution in the hands" of his fiduciaries. No claim, therefore, could validly be asserted against the trust property—by attachment or execu-

tion—while in the custody and control of his trustees.[6] As the owner of the property, he was privileged to exercise the right to protect his gift from assignment and anticipation (by his beneficiaries) and from attachment and execution while in the hands of his trustees. This David L. Clark did with clarity and definiteness. The legal protection he thus accorded the property of the trust may not be impaired nor its effectiveness diminished.

It follows, therefore, that all of the instant proceedings seeking to reach directly or indirectly any portion of the corpus of the spendthrift trust must fail. The testator designed and fashioned his trust to achieve this legal result. In complete harmony with the purpose of the trust (as directed by the testator himself), the court below correctly dissolved the attachments filed against the trustees and properly disposed of the remaining actions.

Orders affirmed. Costs upon appellants.

---

[6] The language used in the instant case is much stronger than that used in *Sproul-Bolton v. Sproul-Bolton,* supra, where the trust assets were held to be subject to attachment after the beneficiary reached the designated age but before payment to him.

As for support, not here involved, see note 4 supra.