Carter Estate.

Argued November 20, 1968. Before BELL, C. J., JONES, COHEN, EAGEN, O'BRIEN and ROBERTS, JJ.

*Paul Maloney,* with him *James R. Ledwith,* and *Pepper, Hamilton & Scheetz,* for appellant.

*William H. Lathrop,* with him *E. A. Dixon, Jr.,* and *Montgomery, McCracken, Walker & Rhoads,* for appellee.

*Peter M. Mattoon,* with him *H. Ober Hess,* and *Ballard, Spahr, Andrews & Ingersoll,* for appellees.

*John L. Harrison, Jr.,* with him *Duane, Morris & Hecksher,* for guardian and trustee ad litem.

OPINION BY MR. CHIEF JUSTICE BELL, October 9, 1969:

This case arose in the Orphans' Court with the filing of a trustee's account in the Estate of Henry L. Carter. At the audit of this trust account, a petition for a declaratory judgment was filed by and on behalf of *the executor of a deceased trust beneficiary,* Alfred V. Leaman, 3rd. Alfred V. Leaman, 3rd, was the son of one of the daughters of the original testator who created this trust. In its adjudication sur the trustee's account, the Orphans' Court rejected the claim of said executor (1) for *income* after the death of Alfred V. Leaman, 3rd, and (2) also ruled in the declaratory judgment claim that Alfred's estate would have no interest in the *principal* of the trust upon its termination. Alfred's executor has appealed from this combined final decree.

Henry L. Carter died on July 16, 1907, leaving a will dated August 28, 1903. He was survived by his wife and by seven children. Testator's wife and all *except one* of the seven children have since died, *four having left surviving issue.*

By his will, Henry L. Carter created a trust for the benefit of the members of his immediate family and their issue; this trust is to terminate upon the death of the testator's last surviving child. Carroll H. Carter, age 75, is the testator's last surviving child and has no issue or living descendants.

This litigation is occasioned by the death, on February 9, 1966, of Alfred V. Leaman, 3rd,—a grandchild of the testator—without issue. Alfred was the son of Dorothy Carter Leaman, *a daughter of the testator,* who died in 1932. The facts are somewhat unusual and the issues somewhat unique, so we will repeat some of the hereinabove stated facts.

At the audit of this present trustee's account filed by Henry L. Carter's trustee, the executor of Alfred's will claimed (1) the share of trust income from the date of Alfred's death which would have been paid

to Alfred had he continued to live, and (2) a determination that Alfred's estate will be entitled to a share of the principal of the trust upon its termination. Subsequently, in the same proceeding, Alfred's executor filed a petition for a declaratory judgment reiterating his claim for a share of the trust principal upon the termination of the trust.* We note parenthetically that Alfred's executor is also a beneficiary under Alfred's will. Surviving issue of several of Henry L. Carter's children, who were joined by the guardian and trustee ad litem appointed by the Court to represent minors and unascertained parties in interest, opposed the claims made by Alfred's executor both as to income and as to principal.

## Justiciability

The estate of Alfred V. Leamans, 3rd, and his beneficiaries are entitled to know now whether his estate and they are entitled to *any income* from the Henry L. Carter trust. On the other hand, the principal of the trust, we repeat, is not distributable until the death of Carroll H. Carter, testator-trustor's last surviving child, and ordinarily the question of the distribution of principal would not be considered ripe for decision. Nevertheless, the provisions of the Uniform Declaratory Judgments Act of June 18, 1923, P. L. 840, as amended, July 25, 1963, P. L. 305, 12 P.S. §831 et seq., appear to make the issue regarding principal presently justiciable. If Alfred V. Leaman, 3rd, had a vested interest in the principal of the trust created by his grandfather, it will be necessary (a) to include the value of this interest as part of his gross estate for Federal Estate Tax purposes, and (b) of course

---

* The declaratory judgment action was commenced presumably because the Orphans' Court would have been unable to make an award of the principal in the audit proceedings, since the trust had not yet terminated.

to pay additional estate taxes as a result. If his interest is merely a contingent one (or if he has no interest therein), it will not be necessary to include it in the Federal Estate Tax return to be filed by the executor of his estate.

Section 6 of the Uniform Declaratory Judgments Act, as amended (12 P.S. §836), reads in pertinent part as follows: "Relief by declaratory judgment or decree may be granted in all civil cases where . . . in any such case the court is satisfied that a party asserts a legal relation, status, right or privilege in which he has a concrete interest and . . . *that there is an uncertainty with respect to the effect of such asserted relation, status, right or privilege upon the determination of any tax imposed or to be imposed by any taxing authority, including the United States* . . . and the court is satisfied also that a declaratory judgment or decree will serve to terminate the uncertainty or controversy giving rise to the proceeding."*

It is an undisputed fact that the United States has decided not to participate in these proceedings. Nevertheless, Alfred's executor is obligated by Federal law to file a Federal Estate Tax return within a limited time period and should, therefore, be entitled to a resolution of these two issues. *Purnell Estate*, 424 Pa. 263, 226 A. 2d 488. See also, *Commissioner v. Estate of Bosch*, 387 U.S. 456, with respect to the effect of a State Court determination on the issue of Federal tax liability.

*Interpretation*

The law and the legal principles governing the interpretation of wills is well settled, but their application to poorly or ambiguously drawn wills (especially to holographic wills and lengthy testamentary trusts) is often difficult. The pertinent principles may be

---

* Italics throughout, ours.

thus briefly summarized: A testator's intent, unless unlawful, shall prevail; that intent shall be ascertained from a consideration of (a) all the language contained in his will, and (b) his scheme of distribution, and (c) the circumstances surrounding him at the time he made his will, and (d) the existing facts; and (e) canons of construction will be resorted to only if the language of the will is ambiguous or conflicting or the testator's intent is for any reason uncertain. *Houston Estate,* 414 Pa. 579, 201 A. 2d 592; *Burleigh Estate,* 405 Pa. 373, 175 A. 2d 838; *Dinkey Estate,* 403 Pa. 179, 168 A. 2d 337; *Pruner Estate,* 400 Pa. 629, 162 A. 2d 626; *Wanamaker Estate,* 399 Pa. 274, 159 A. 2d 201; *Hope Estate,* 398 Pa. 470, 159 A. 2d 197; *Lewis Estate,* 407 Pa. 518, 520, 180 A. 2d 919. See also, *Benedum Estate,* 427 Pa. 408, 235 A. 2d 129.

Item Fourth of testator's aforesaid will dated August 28, 1903, gives the residuary estate to trustees to invest, collect the *income* therefrom, and pertinently provides: "One third thereof unto my said wife Julia Levis Carter for and during the term of her natural life and from the remaining two thirds of such income to set aside therefrom the sum of one thousand dollars ($1000) annually to pay for the support of my son Israel Day Carter* so long as he shall live and the residue of the said two thirds of such income to pay over in equal shares among my remaining children and the issue of such of them as may be deceased *the issue of a deceased child to take the share of income his her or their parent would have taken if living,** until the death of my last surviving child* (excepting from such survivor my said son Israel Day Carter to whom I have left an annuity of one thousand dollars ($1000) and which I intend is all the benefit he shall derive

---

* Israel Day Carter was one of the seven children who survived Henry L. Carter, but he has since died.

** Comma, ours.

from my estate). *In case any of my said children die without issue prior to the death of my said last surviving child then I direct the income to which the child* [of the testator] *so dying would have been entitled if living shall be divided equally among my remaining children* (excepting my said son Israel Day Carter) *and the issue of such of them as may be deceased such issue taking the share of their deceased parent.* And upon the death of my said wife Julia Levis Carter and the death of my said son Israel Day Carter or either of them the income theretofore set apart for the benefit of my said wife and the said sum of one thousand dollars ($1000) reserved thereout for the support of my said son Israel Day Carter shall become part of the income payable to my remaining children and their issue and be distributed among them as hereinbefore directed for the distribution of the income of my estate to them immediately upon my death."

Item Fourth then continues: *"Upon the death of my said last surviving child* (excepting always therefrom my said son Israel Day Carter) I direct that the *principal* of my estate upon which *my said children and their issue* shall have been receiving income shall be divided into *as many equal shares as I shall have children leaving lineal descendants them surviving* when each such equal share shall be paid over to my said *grandchildren* absolutely they taking per stirpes and not per capita. And should my said wife Julia Levis Carter or my said son Israel Day Carter or either of them survive all my said other children then upon their deaths respectively I direct that the principal held in trust for them shall be distributed among *my said grandchildren* in the same way as I have heretofore provided for the distribution of the other portion of the principal of my said estate."

The first and most important basic contention of appellant is that the Orphans' Court erred in determin-

ing the intention of testator *by implying a condition of survivorship where none exists:* viz., when the testator provided for *the division of the principal* "into as many equal shares as I shall have children leaving lineal descendants *them* surviving," the Orphans' Court interpreted the word "them" to mean "then." Appellant asserts that the only express condition of survivorship which a grandchild or lineal descendant of the testator must meet is to survive his or her parent (i.e., a child of testator). Appellant further and more particularly contends that Alfred V. Leaman, 3rd,—having survived his mother (who was one of testator's daughters who survived the testator)—or his estate enjoys an indefeasible right to receive the income from the trust until its termination, and at that time to share in the distribution of principal *in spite of his death without issue prior to the termination of the trust.*

Appellant further contends that the will indicates an intention that all distribution of income or principal *shall be restricted to persons no more remote than grandchildren.* In support of this, appellant points (1) to the *income* provisions which state that "the issue of a deceased child to take the share of income *his, her or their parent* would have taken if living . . . [and] *In case any of my said children die without issue prior to the death of my said last surviving child then I direct the income to which the child* [of the testator] *so dying would have been entitled if living shall be divided equally among my remaining children . . . and the issue of such of them as may be deceased such issue taking the share of their deceased parent;"* and (2) to the *principal* provisions which state: *"Upon the death of my said last surviving child . . . I direct that the principal* of my estate upon which *my said children and their issue* shall have been receiving income shall be divided into *as many equal shares as I shall have children leaving lineal descendants them surviving*

when each such equal share shall be paid over to my said *grandchildren*\* absolutely they taking per stirpes and not per capita."

We have often said that (1) where a testator's intent is not clear from his language and the surrounding circumstances, a Court will resort to canons or rules of construction to aid us in its interpretation, see *Benedum Estate*, 427 Pa., supra, and *Burleigh Estate*, 405 Pa., supra; and (2) no will has a twin brother, *Clark v. Clark*, 411 Pa. 251, 191 A. 2d 417; *Williamson's Estate*, 302 Pa. 462, 153 Atl. 765.

We have reviewed all the rules of construction and find none of them helpful or controlling; and we have found no "twin brother," although *Nixon's Estate*, 306 Pa. 261, 159 Atl. 442, is fairly close and would support our interpretation of the *Carter* will.

In view of certain ambiguous language in this will, including the indiscriminate use of "issue," "lineal descendants," and "grandchildren," testator's intent cannot be said to be clear and free from doubt. Nevertheless, considering the will in its entirety, we believe that the lower Court correctly decided that the appellant was not entitled to any part or share of income, nor any part or share of principal at the termination of the trust.

Decree affirmed, the trust estate to pay the costs.

---

\* We cannot resist quoting Chief Justice Maxey's footnote in *Clark Estate*, 359 Pa. 411, 423, 59 A. 2d 109: "When Thomas Fuller in *Gnomologia* wrote 'We are all Adam's children', he did not mean thereby that we are Cain and Abel and when Shakespeare in *Love's Labour's Lost* wrote of 'our grandmother, Eve', he did not mean that he was the third generation in descent from 'the first parents' and when in Henry VIII he used the lines:

'Our children's children

Shall see this and bless heaven'

he apparently had no intention of depriving heaven of the 'blessing' of *great*-grandchildren."